## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT REILLY,

                Plaintiff,

              v.

LEHIGH VALLEY HOSPITAL,

                Defendant

CIVIL ACTION NO. 09-CV-5816

**Henry S. Perkin, M.J.**                         **March 15, 2012**

## MEMORANDUM

       This matter is before the Court on Defendant Lehigh Valley Hospital's Motion for Summary Judgment filed April 1, 2011.  Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment was filed May 9, 2011.  With leave of Court, Defendant Lehigh Valley Hospital's Reply Brief in Support of Motion for Summary Judgment was filed June 7, 2011.  Having reviewed and considered the contentions of the parties, the Court is prepared to rule on this matter.

## Procedural History

       On November 9, 2009, Plaintiff Robert Reilly ("Reilly") initiated this matter by filing a two-count Complaint against Defendant Lehigh Valley Hospital ("LVH") in the Court of Common Pleas of Lehigh County.  Count I of Reilly Complaint asserts a federal law cause of action pursuant to Title I of the Americans with Disabilities Act of 1990 ("ADA").[1]  Count II avers a pendent state law cause of action pursuant to the Pennsylvania Human Relations Act

---

[1]     Act of July 26, 1990, P.L. 101-336, 104 Stat. 327, 42 U.S.C. § 12101, *et seq.*

("PHRA").[2]  According to his Complaint, Reilly contends that LVH wrongfully terminated his employment in violation of the ADA and PHRA because it regarded him as a former alcoholic and drug addict.

On December 7, 2009, LVH filed a Notice of Removal based on the federal ADA claim.  On December 14, 2009, LVH filed its answer to the Complaint.  The parties engaged in discovery and the Court, by virtue of its December 8, 2010 Rule 16 Scheduling Order, directed that all dispositive motions (including a separate, short and concise statement of material facts) be filed on or before April 1, 2011.

**Facts**

Based upon the record papers, exhibits, depositions, and the parties' statements of the facts,[3] the pertinent facts to this Court's determination are as follows:

LVH employed Reilly as a part-time security officer in its Security Department from August 10, 2006 until his employment was terminated on May 2, 2008.

Reilly completed and signed an LVH employment application on May 4, 2006. On August 1, 2006, as part of the LVH hiring process, Reilly completed and signed a seven page employer health information document known as the "Lehigh Valley Health Network Pre-Employment Physical Authorization and Subsequent Physical Requirements" form ("Employee Form").  The next to the last question on the Employee Form asked Reilly the following question: "Have you ever been recognized as or diagnosed with alcoholism or drug

---

[2]     Act of October 27, 1955, P.L. 744, No. 222, §§ 1-13, as amended, 43 P.S. §§ 951-963.

[3]     In conjunction with the filing of its motion for summary judgment on April 1, 2011, LVH submitted its statement of uncontested material facts.  Reilly responded to this statement of uncontested facts on May 9, 2011 when he filed his response in opposition to the motion for summary judgment.  In so doing, Reilly admitted most of the facts submitted by LVH.  The admitted facts are included within this Memorandum.

addiction."  Reilly answered "no."  The last question on the Employee Form asked Reilly the

following question: "Have you ever been or are you now being treated for alcoholism or drug

addiction."  Again, Reilly answered "no."  Reilly also left blank the Employee Form's follow-up

inquiry, which stated: "If so, specify type of treatment."

>    The Employee Form contains the following attestation language:

>> I have reviewed the foregoing statement. This information is true
>> and correct to the best of my knowledge and I understand that any
>> falsifying of this information could result in withdrawal of the
>> employment offer or if subsequently discovered termination of my
>> employment.

Reilly, by signing the Employee Form, understood that his signature certified to LVH that the

information which he provided on this pre-employment record was true and correct to the best of

his knowledge.

>    Reilly recognizes himself as having been an alcoholic since 2002 and has

admitted that he recognized himself as an alcoholic when he signed the Employee Form on

August 1, 2006.  Reilly regularly attended Alcoholics Anonymous ("AA") meetings from 2002

through at least November 5, 2010, which was the date of his deposition.  On August 1, 2006,

when Reilly completed and signed the Employee Form, he attended AA meetings every other

day.

>    Reilly admits that he was a drug addict from 1997 to 2002.  Beginning in 2002,

Reilly, because of his then serious drug abuse, began attending daily Narcotics Anonymous

("NA") meetings.  On August 1, 2006, when Reilly completed and signed the Employee Form,

he attended NA meetings every other day.  Reilly admits that he recognized himself as a

recovering drug addict when he completed and signed the Employee Form.

Reilly pleaded guilty to Driving Under the Influence ("DUI") criminal charges brought in Bucks County in 1995. As a result of his DUI conviction, Reilly attended the Livengrin drug and alcohol addiction treatment facility, through the court's Accelerated Rehabilitative Disposition ("ARD") program. Livengrin describes itself on its website as "[a] Network of Seven Drug & Alcohol Addiction Treatment & Rehab Centers." http://www.livengrin.org/liv_html/mission.html (last accessed on February 7, 2011). Livengrin's website states that its "Vision" is "[t]o continue to earn the respect and trust of our patients and our profession, and the recognition as one of the premier providers of addiction treatment services in Pennsylvania and throughout the nation." Id. (last accessed on February 7, 2011). Reilly attended approximately 40 hours of programs at Livengrin and he also met with Livengrin's drug and alcohol addictions professionals. Reilly avers that he attended Livengrin believing that the fulfillment of the program was a requirement of his DUI arrest.

On April 5, 2008, while working night shift as a security officer, Reilly sustained an eye injury, which he believed was work related. At the end of his shift, Reilly returned home and his wife drove him to the LVH-Muhlenberg Campus Emergency Room ("LVH-ER") for emergency eye treatment. While in the LVH-ER, Reilly disclosed to an LVH-ER healthcare provider that he had a history of drug use involving narcotics and that he was a recovering drug addict. This information was recorded by the LVH-ER healthcare provider on a LVH document labeled "Emergency Department Physician Clinical Report" ("LVH-ER Clinical Report"). The "SOCIAL HISTORY" portion of the LVH-ER Clinical Report states the following about Reilly: "History of drug use: narcotics. Is a recovering addict." Reilly has affirmed that the information contained on this report is accurate.

4

According to LVH, when one of their employees sustains a possible work-related injury and is treated by a LVH healthcare provider, the medical treatment records of the LVH-treated employees are routinely furnished to the LVH Employee Health Services Department, which manages and administers workers' compensation issues involving LVH employees. The LVH-ER supplied Reilly's registration in the Emergency Department as a work-related injury to the LVH Employee Health Services Department. After receiving the information, the LVH Employee Health Services Department notified the LVH Human Resources Department that Reilly had not been truthful in the information he supplied as part of his pre-employment physical exam.

Mike Warfel ("Warfel"), an LVH managerial employee, was Reilly's immediate supervisor in the Security Department. On May 2, 2008, Warfel met with Reilly for a termination meeting.[4] At this meeting, Warfel handed Reilly a "Personnel Report" dated May 2, 2008, which Reilly read and signed. The May 2, 2008 Personnel Report states, among other things, that LVH was discharging Reilly, effective immediately, for "dishonesty" in violation of the LVH "Employee and Counseling Discipline Policy No. 2000.40" ("Discipline Policy No. 2000.40"). Discipline Policy No. 2000.40(IV)(6)(K) provides that immediate discharge may occur for an employee's "dishonesty" infraction. LVH terminated Reilly on the basis of his failure to disclose his history of, and treatment for, drug abuse in employment records, concluding that his failure to disclose constituted a "dishonesty" infraction -- one that violated Discipline Policy No. 2000.40(IV)(6)(K).

---

[4]    Before the May 2, 2008 termination meeting, Reilly never discussed his drug and alcohol addiction history with Warfel. Reilly has confirmed that he did not have any problems working with Warfel.

Reilly does not know of any other LVH employee whom LVH believed falsified information on LVH employment documents yet was not discharged. Reilly is unable to identify any similarly situated non-disabled LVH employees whom LVH treated more leniently or favorably than Reilly. Reilly is unable to identify any LVH employees who engaged in work-related dishonesty in the Security Department and who were not disciplined. Reilly is unable to identify any other disabled LVH employees whom Reilly believed LVH discriminated against. Reilly has confirmed that his drug and alcohol addiction did not, at the time of his termination, substantially limit him in any major life activities. Reilly never requested a reasonable accommodation from LVH. In fact, Reilly admits that he was not actually disabled when terminated by LVH.

### Standard of Review

Subject matter jurisdiction over the alleged violation is proper pursuant to 28 U.S.C. § 1331. Because Reilly's state law claim forms part of the same case or controversy, subject matter jurisdiction over the PHRA claim is proper pursuant to 28 U.S.C. § 1367(a).

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue

6

is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Anderson, 477 U.S. at 249.  A factual dispute is material only if it might affect the outcome of the suit under governing law.  Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325).  The non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim.  Celotex, 477 U.S. at 322-323.  If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper.  Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).  When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case."  Jones v. Indiana Area Sch. Dist., 397 F. Supp.2d 628, 642 (W.D. Pa. 2005) (quoting Celotex, 477 U.S. at 325).

**Discussion**

Disability Discrimination Claim

The United States Court of Appeals for the Third Circuit similarly considers ADA and PHRA claims.  Garvin v. Progressive Casualty Insurance Co., No. 08-3758, 2010 U.S. Dist. LEXIS 46524, * 10 (May 10, 2010) (citing Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir.

1996)).  Accordingly, this Court will focus on the ADA claim and apply the same analysis and conclusions to Reilly's PHRA claim.[5]

According to the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment."  42 U.S.C. § 12112(a).  In order to make out a *prima facie* case of disability discrimination under the ADA, Reilly must establish that he: 1) has a disability or is regarded as having a disability; 2) is otherwise qualified to perform the essential functions of the job; and 3) has suffered an adverse employment action because of that disability.  Garvin, 2010 U.S. Dist. LEXIS 46524, * 11 (citing Turner v. Hershey Chocolate USA, 440 F.3d 604, 611 (3d Cir. 2006); Skerski v. Time Warner Cable Co., 257 F.3d 273, 278 (3d Cir. 2001)).  With respect to this matter, and for argument purposes only, LVH has assumed that Reilly can

---

[5]   As noted by United States District Court Judge Mitchell S. Goldberg,

Congress recently amended the ADA by enacting the ADA Amendments Act of 2008 (hereinafter "ADAAA"), Pub. L. No. 110-35, 122 Stat. 3553 (2008).  The ADAAA became effective on January 1, 2009, and broadened the definition of disability.  The ADAAA should not, however, be retroactively applied to conduct prior to January 1, 2009, 'if it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'  Landgraf v. USI Film Prods., 511 U.S. 244, 280, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994).  Accordingly, Judges in this District have refused to apply the ADAAA retroactively.  See Namako v. Acme Markets, Inc., No. 08-3255, 2010 U.S. Dist. LEXIS 23182, 2010 WL 891144 (E.D.Pa. Mar. 11, 2010); Seibert v. Lutron Elecs., No. 08-5139, 2009 U.S. Dist. LEXIS 110823, 2009 WL 4281474 (E.D. Pa. Nov. 30, 2009).

Garvin v. Progressive Casualty Insurance Co., No. 08-3758, 2010 U.S. Dist. LEXIS 46524, * 10-11 n.4 (May 10, 2010).  In this matter, the conduct at issue occurred between 2006 and 2008, rendering the ADAAA inapplicable.  Accordingly, we will apply the ADA as enacted and interpreted prior to January 1, 2009.

demonstrate a *prima facie* case of disability discrimination.  LVH Brief at 11.

       The Third Circuit has adopted the McDonnell Douglas burden shifting framework and applied it to disability discrimination claims.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Parker v. Verizon Pa., Inc., 309 Fed. Appx. 551, 555 (3d Cir. 2009).  Once the plaintiff has made out a *prima facie* case of disability discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  McDonnell Douglas, 411 U.S. at 802.  In this matter, LVH asserts that it discharged Reilly for dishonesty based on its perception that Reilly falsified employment records.  LVH Brief at 11.

       Because LVH has asserted a legitimate, nondiscriminatory reason for its termination decision, i.e. dishonesty, the burden shifts back to Reilly to adduce sufficient evidence to establish that LVH's offered reason was a pretext for the employment discrimination. Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994).  Sufficient evidence of pretext is evidence which: "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a fact finder could reasonably conclude that each reason was a fabrication; or 2) allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  Id.  In short, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employee's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence.'"  Id. at 765 (citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992)).

       According to his deposition testimony, Reilly appears to raise two arguments as it

relates to pretext.  First, Reilly claims that he answered truthfully with respect to the Employee Form's question inquiring as to whether he had ever been recognized as an alcoholic or drug addict because he has never been formally diagnosed as an alcoholic or drug addict.  The Employee Form, however, did not limit the question to a formal diagnosis.  Rather, the Employee Form asked Reilly whether he had ever been "**recognized as or** diagnosed with alcoholism or drug addiction." (Emphasis added.)  To this question, despite having freely admitted that he recognized himself as an alcoholic and drug addict, Reilly answered no.  Moreover, as noted by LVH, because of his admitted regular, long term attendance at AA and NA meetings, Reilly was undeniably recognized by others as an alcoholic and drug addict.  LVH Brief at 13.

Next, Reilly avers that he truthfully answered the question on the Employee Form inquiring whether he had ever been treated for alcoholism or drug addiction because he has never received drug and alcohol abuse "treatment" as it is defined by him.  The record demonstrates, however, that Reilly attended approximately 40 hours of programs at the Livengrin drug and alcohol addiction treatment facility where he met with Livengrin's drug and alcohol addictions professionals.  He avers that he attended Livengrin believing that the fulfillment of the program was a requirement of his DUI arrest.  Reilly also has attended, and is still attending, regular AA and NA meetings.  Despite admitting the foregoing, Reilly answered "no" on the Employee Form when he was asked if he had "ever been or are you now being treated for alcoholism or drug addiction."  Contrary to Reilly's assertions, the Employee Form's question is not limited in scope to treatment voluntarily chosen as opposed to court-ordered.  Despite having attended a known treatment facility and numerous AA and NA meetings, Reilly denied ever having been treated for alcoholism or drug addiction.

10

Despite the foregoing, the relevant inquiry in this District is whether LVH's decisionmakers, at the time of the termination decision, honestly believed that Reilly had answered these questions dishonestly.  <u>Garvin</u>, 2010 U.S. Dist. LEXIS 46524, * 19-20 ("Plaintiff raises only Plaintiff raises only two (2) arguments as it relates to pretext on the disability discrimination. He first argues that Lloyd, his manager, failed to review all of the documentation surrounding the internal investigation prior to terminating Plaintiff....  This argument fails because it is well-established that a court will not second-guess a company's business judgment or decisional process....  The only inquiry is whether the decisionmaker, Lloyd, at the time of his decision, honestly believed that Plaintiff had violated the company's policy at issue....  Here, the record establishes that Lloyd had reviewed information relevant to the investigation on the falsified expense report and that he based his decision on that information....") (citations omitted).  Here, the record clearly establishes that LVH reviewed Reilly's admissions as to his recovering drug addict status on the LVH-ER Clinical Report together with the information he provided on the Employee Form and LVH's decision to terminate Reilly was made on that basis.

Moreover, even assuming LVH was mistaken as to the scope of the Employee Form's questions, it may make a bad or mistaken termination decision as long as the mistaken decision is not based on Reilly's recovering addict status.  <u>Garvin</u>, 2010 U.S. Dist. LEXIS 46524, * 20 ("Plaintiff's state of mind is irrelevant - it is the state of mind of the decisionmaker that matters in terms of pretext....  Furthermore, even if Plaintiff did make an honest mistake, somehow confusing his girlfriend with police officers, an employer can make a 'bad' decision to terminate an employee as long as the 'bad' decision is not based on a disability....") (citations omitted).  Reilly's interpretation of the two questions on the Employee Form could not

demonstrate to any reasonable fact finder that LVH's grounds for termination - his falsification of an employment record - are pretextual.  A disciplined employee's bare assertions and unsupported opinion cannot discredit and employer's proffered termination grounds.  <u>Peace-Wickman v. Walls</u>, 2010 U.S. App. LEXIS 26004, *29-30 (3d Cir. Dec. 21, 2010) ("In order to discredit an employer's proffered reasons, 'the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons....'  The evidence presented by Peace-Wickham consists largely of her own bare assertions and unsupported opinions offered to contradict [the employer's] explanations.  Unsupported retorts do not cast sufficient doubt to overcome the threshold we articulated in <u>Fuentes</u>.") (citations omitted).

The record is devoid of pretext evidence.  Reilly admits that he does not know of any other LVH employee whom LVH believed falsified information on LVH employment documents yet was not discharged.  Reilly is unable to identify any similarly situated non-disabled LVH employees whom LVH treated more leniently or favorably than him.  Reilly is unable to identify any LVH employees who engaged in work-related dishonesty in the Security Department and who were not disciplined.  Finally, Reilly is unable to identify any other disabled LVH employees whom he believed LVH discriminated against.  In short, Reilly has adduced no evidence upon which a reasonable jury could find that such a legitimate, non-discriminatory reason for termination was fabricated or so weak, implausible, inconsistent or incoherent that it is unworthy of credence.

<u>Improper Medical Inquiry</u>

In his response to LVH's motion for summary judgment, Reilly now asserts that LVH violated the ADA's prohibition against pre-offer medical inquiries.  More specifically, Reilly avers that LVH subjected him to an unlawful examination, at which his denial of any history of drug or alcohol abuse or treatment thereof was elicited.  Reilly Memorandum at 4. LVH contends that this is a new claim, and Reilly should not be permitted to informally amend his Complaint to add an improper medical inquiry claim while summary judgment is pending. LVH Reply Brief at 2-4.  LVH further asserts that if even this claim is allowed, it remains entitled to summary judgment for lack of fair notice, a failure to exhaust administrative remedies, and undisputed record evidence demonstrating that LVN subjected Reilly to permissible post-offer/pre-employment drug and alcohol screening.  LVH Reply Brief at 4.

Initially, we note that Reilly has not formally moved for leave to file an Amended Complaint adding an improper medical inquiry claim.  <u>Amboy Bancorporation v. Bank Advisory Group, Inc.</u>, 2011 U.S. App. LEXIS 8494, * 22 (3d Cir. April 25, 2011) (Third Circuit declined to entertain appellant's breach of fiduciary claim/argument, which was raised for the first time in opposition to appellee's motion for partial summary judgment).  In addition, courts frequently deny formal motions for leave to amend made when summary judgment motions are pending. <u>See</u> <u>Estate of Olivia v. N.J. Dept. Of Law and Public Safety</u>, 604 F.3d 788, 803 (3d Cir. 2010) ("The presence of a potential First Amendment claim was or should have been apparent to him from at least the time that he filed his second amended complaint . . . .  Moreover, he does not justify his delay in seeking to add such a claim until after Appellees filed their motion for summary judgment . . .").  Assuming for these purposes that Reilly would be permitted to bring

an improper medical inquiry claim at this late stage, we nevertheless conclude that such a claim would not preclude summary judgment in favor of LVH.

The ADA restricts an employer's ability to make medical examinations or inquiries that relate to an applicant's disability status.[6] See 42 U.S.C. § 12112(d).  Subsection 12112(d)(1) provides that "the prohibition against discrimination . . . shall include medical examinations and inquiries."  42 U.S.C. § 12112(d)(1).  With regard to medical examinations and inquiries, the ADA has separate rules governing pre-offer job applications (42 U.S.C. § 12112(d)(2)) and post-offer/pre-employment examinations (42 U.S.C. § 12112(d)(3)).

In the pre-offer stage, "a covered entity shall not conduct a medical examination or make inquiries of a job applicant as to whether such applicant is an individual with a disability or as to the nature or severity of such disability."  42 U.S.C. § 12112(d)(2)(A).  An employer may only inquire into the "ability of an applicant to perform job-related functions."  42 U.S.C. § 12112(d)(2)(B); see also 29 C.F.R. § 1630.14(a) (providing that an employer may make "pre-employment inquiries into the ability of an applicant to perform job-related functions, and/or may ask an applicant to describe or to demonstrate how, with or without reasonable accommodation, the applicant will be able to perform job-related functions.")

In the post-offer/pre-employment stage, "a covered entity may require a medical examination after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant, and may condition an offer of

---

[6]       As noted by LVH, the PHRA does not prohibit employer requests for medical examinations.  Any such improper medical inquiry claim, therefore, is only cognizable under the ADA.  Law v. Garden State Tanning, 159 F. Supp. 2d 787, 794 n.3 (E.D. Pa. 2001) ("The PHRA does not prohibit requests by employers for medical examinations. . . .  Thus, the plaintiff's wrongful inquiry claim can be considered under the ADA only.").  LVH Reply Brief at 5.

employment on the results of such examination."  42 U.S.C. § 12112(d)(3); <u>see also</u> 29 C.F.R. §

1630.14(b) (providing that an employer may "require a medical examination (and/or inquiry)

after making an offer of employment to a job applicant and before the applicant begins his or her

employment duties, and may condition an offer of employment on the results of such

examination (and/or inquiry) regardless of disability").

> Prior to consideration of the improper medical inquiry claim, however, we must

first determine whether Reilly exhausted this potential claim.  As a general rule, a plaintiff

alleging employment discrimination cannot bring claims in federal court that were not first

included in an EEOC charge and exhausted at the administrative level.[7]  <u>See Burgh v. Borough</u>

<u>Counsel of Montrose</u>, 251 F.3d 465, 469 (3d Cir. 2000).  The Court of Appeals for the Third

Circuit has recognized that this exhaustion requirement serves two purposes:

> First, it puts the employer on notice that a complaint has been
> lodged against [it] and gives [it] the opportunity to take remedial
> action. Second, it gives the EEOC notice of the alleged violation
> and an opportunity to fulfill its statutory responsibility of seeking
> to eliminate any alleged unlawful practice by informal methods of
> conciliation, conference, and persuasion.

<u>Bihler v. Singer Co.</u>, 710 F.2d 96, 99 (3d Cir. 1983).  To determine whether a plaintiff has

exhausted his administrative remedies, courts examine whether the acts alleged in the subsequent

suit are fairly within the scope of the prior administrative charges or the investigation arising

therefrom. <u>Antol v. Perry</u>, 82 F.3d 1291, 1295 (3rd Cir. 1996).

> From the papers submitted by the parties in connection with the present motion, it

---

[7]    The administrative Charge must be filed with the EEOC within the statutory time period, which in Pennsylvania is three hundred (300) days. <u>Watson v. Eastman Kodak Co.</u>, 235 F.3d 851, 854 (3d Cir. 2000); <u>see also</u> <u>Buck v. Hampton Twp. Sch. Dist.</u>, 452 F.3d 256, 260 (3d Cir. 2006); <u>see also</u> 42 U.S.C. § 2000e-5(e)(1); and 42 U.S.C. § 12117(a).

is apparent that Reilly did not bring this improper medical inquiry claim to the attention of the

EEOC.  More specifically, the EEOC Charge contains the following particulars:

> Complainant Robert Reilly was employed by Respondent Lehigh
> Valley Hospital as a Security Officer.  On April 4, 2008,
> Complainant was treated in the emergency room.  Complainant
> disclosed information on his patient information paperwork, which
> was later used as a reason for his termination.  Complainant was
> told he was terminated for dishonesty because he didn't disclose
> this information on his pre-employment application.  Complainant
> believes he was regarded as having a disability, and therefore
> terminated in violation of the Americans With Disabilities Act.
> Further, Complainant believes the Respondent violated the HIPPA
> laws because personal information he disclosed as a patient, was
> used against him as an employee.

LVH Reply Brief, Exhibit "B."  As evidenced by the foregoing, Reilly's improper medical

inquiry claim does not fall within the scope of his EEOC Charge in which he alleged only that

LVH discriminated against him by terminating his employment based upon a perceived

disability.

In view of the total absence of any allegations concerning improper medical

inquiry, the Court finds that any investigation could not "reasonably be expected to grow [into

allegations of disability discrimination or retaliation] out of the charge of discrimination" in this

matter.  Johnson v. Chase Home Finance, 309 F. Supp. 2d 667, 672 (E.D. Pa. 2004).  We

conclude that the EEOC, as well as LVH, were not put on notice of an improper medical inquiry

claim.  The purpose of requiring exhaustion is to afford the EEOC or other state administrative

commission, the opportunity to settle disputes through conference, conciliation, and persuasion,

thereby avoiding unnecessary action in court.  Antol, 82 F.3d at 1296.  Accordingly, Reilly's

potential improper medical inquiry claim must be dismissed on account of his failure to exhaust

administrative remedies.

Even if Reilly had fully exhausted his administrative remedies, no genuine issue of material fact exists that LVH made a post-offer/pre-employment, as opposed to a pre-offer, request for Reilly's drug and alcohol addition history.  Reilly's observation in his brief that LVH's motion papers failed to assert that the drug and alcohol screening was post-offer/pre-employment is not evidence.  Reilly Memorandum at 2-3.  See  Jersey Central Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-1110 (3d Cir. 1985) (arguments made in briefs are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion), cert. denied, 475 U.S. 1013 (1986).

Reilly himself does not allege that LVH had not communicated a conditional job offer to him before he completed the Employee Form.  Nor did Reilly complain about, or mention, pre-offer medical inquiries during his deposition, despite detailed questioning regarding the factual underpinnings of his claim.  Record facts determine the conditional offer's timing, not conjecture or attorney supposition and argument.  See Miller v. Westinghouse Electric Co., 2010 U.S. Dist. LEXIS 61071, *7 (W.D. Pa. June 21, 2010) ("Although inferences must be drawn in favor of the nonmoving party, 'an inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment....'  Similarly, the non-moving party cannot rely on unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment.") (citations omitted).

The language of the Employee Form makes it clear that it was post-offer/pre-employment:

Reilly acknowledged that he understood that his employment with

LVH was contingent upon his passing the physical examination, including
laboratory studies.

> Reilly acknowledged that he understood that his physical
> examination was for pre-placement and fitness-for-duty purposes
> only.
>
> Reilly attested that he understood that any falsifying of information
> on the Employee Form 'could result in **withdrawal of the
> employment offer** or if subsequently discovered termination of
> [his] employment.'

LVH Reply Brief at 14, Exhibit "E" at 1, 6. (Emphasis added). In addition to the explicit

language of the Employee Form, LVH attaches an Affidavit of its Human Resources Consultant

confirming that Reilly was provided with a conditional offer of employment prior to completing

the Employee Form. LVH Reply Brief, Exhibit "D."

Reilly relies on Mack v. Johnstown America Corp., 1999 U.S. Dist. LEXIS 6917

(W.D. Pa. May 12, 1999), to support his improper medical inquiry claim. However, unlike the

plaintiff in Mack, Reilly has adduced no record evidence that the medical inquiry or examination

by LVH was done pre-offer. Rather, according to the undisputed evidence submitted by LVH,

the timing of the examination at issue was indeed post-offer.

An Order follows.

18